UNITED STATES DISTRICT COURT
THE NORTHERN DISTRICT OF OKLAHOMA

1. Gwendolyn Ward,

   Plaintiff,

v.

1. CNL Tulsa LLC, *A Foreign Limited Liability Company,*

2. TGC Hospitality Management,

   Defendants.

Case Number: 23 - CV – 00166-TCK-JFJ

## **PLAINTIFF'S COMPLAINT**

Plaintiff, Gwendolyn Ward, brings this action against the Defendants, CNL Tulsa LLC and TGC Hospitality Management for violations of the **Fair Housing Act** and the **Fair Housing Amendments Act, 42 U.S.C.A. § 3601, et seq.**, the **Oklahoma Discrimination in Housing Act,** the **Oklahoma Anti-Discrimination Act, 25 Okla. Stat. § 1401, et. seq**, the **Oklahoma Consumer Protection Act, 15 Okla. Stat. 753(20),** and the **Oklahoma Residential Landlord Tenant Act, 41 Okla. Sat. § 101, et. seq.**

1. Defendants denied necessary reasonable accommodations to the Plaintiff, a person, known to them as a person with disabilities, in violation of the **Fair Housing Act,** the **Oklahoma Discrimination in Housing Act,** and the **Oklahoma Anti-Discrimination Act**.

2. Defendants committed an unfair trade practice against Plaintiff under the **Oklahoma Consumer Protection Act**.

3. Defendants violated the **Oklahoma Residential Landlord Tenant Act** by charging Plaintiff for her service animal and for failing to provide Plaintiff with sufficient notice to terminate her tenancy.

## **JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over the Plaintiff's claims brought under federal law pursuant to **28 U.S.C. §§ 1331, 1343, 2201** and jurisdiction over state law claims pursuant to **28 U.S.C. § 1367**.

5. This Court has personal jurisdiction over the Defendants because the Defendants conduct business in the Northern District of Oklahoma, in Tulsa County, the subject contract was made and expected to be performed in the Northern District of Oklahoma, and the Plaintiff's claims for relief arise from the Defendants' discriminatory conduct and breach of contract that occurred in the Northern District of Oklahoma, in Tulsa County.

6. Venue is proper in this judicial district pursuant to **28 U.S.C. § 1391 (b)** because all or a substantial part of the acts and omissions of the Defendants giving rise to this action occurred in the Northern District of Oklahoma.

## **PARTIES**

7. Plaintiff, Gwendolyn Ward is a 77-year-old woman, who is currently unhoused. She is totally visually impaired and relies on her service dog to guide her when she is walking and to alert her if other people approach. She also relies on assistance from her niece and her digitized walking stick, which she more recently acquired. In early 2022, she lost all her vision, due to unknown causes, which has caused her to adapt to how she navigates day-to-day life and the world. She moved into WoodSpring Suites, hoping it would be a transitional home for her until she found

a place that better suited her needs. She stayed at WoodSpring Suites for three months before being told to vacate unexpectedly.

8. CNL Tulsa, LLC, a foreign limited liability company registered in Oklahoma, independently owns WoodSpring Suites, an extended stay hotel located at 3415 South Sheridan Road, Tulsa, OK 74145.

9. TGC Hospitality Management is an out-of-state company that manages the on-site operations at the WoodSpring Suites in Tulsa; they are not licensed to do business in Oklahoma. The address for their place of business is 322 S. Mosley St. in Wichita, KS 67202.

## STATEMENT OF FACTS

10. Plaintiff called WoodSpring Suites on March 2, 2022, and spoke with Lacey, an agent of WoodSpring Suites; she informed Lacey (last name unknown) that she needed a place to stay but that she would be unable to provide her state identification document ("I.D.") in person at that time because of her recent blindness.

11. Plaintiff then requested that she be allowed to send her niece, Nina Miller, in her place to conduct the transaction, which Lacey agreed to.

12. Later that evening, Ms. Miller traveled to WoodSpring Suites to complete the transaction and showed Ms. Ward's I.D. to Lacey at the front desk, who provided Ms. Miller with a key to the unit.

13. When Plaintiff and her niece checked in at the front desk on March 3, 2022, a

different front desk clerk told Plaintiff that she should have been charged for her service dog and proceeded to charge Plaintiff $50 for having her service dog in the room, despite Plaintiff and her niece having made the clerk aware that the dog was a service dog.

14. After this interaction, Plaintiff was able to move into WoodSpring Suites on March 3, 2022.

15. While living at WoodSpring Suites, Plaintiff frequently walked past the front desk with help from her service dog and her niece to meet the cars that would take her to medical appointments.

16. Plaintiff also received regular notices from WoodSpring Suites staff, reminding her to change her clocks and attend storm shelter meetings.

17. Plaintiff was provided a written notice of the 'rules' for staying at WoodSpring Suites that informed of her late fees, lockout fees, damage fees, as well as other rules.

18. Plaintiff had access to a laundry facility on site and a full kitchen in her unit.

19. After staying in the unit for sixty days, Plaintiff was moved to an extended stay track at WoodSpring Suites.

20. Her rent was then set at a different weekly rate, which Plaintiff paid weekly.

21. Plaintiff and her niece paid rent for the week each week until May 12, 2022.

22. On May 12th, around 7 PM, Plaintiff's niece approached the front desk to pay rent as she normally did.

23. When she attempted to pay rent, she was told they would be unable to rent to Plaintiff and that Plaintiff would need to be out by 11 AM the next day.

24. When Plaintiff's niece inquired as to the reasoning for the non-renewal, the agent

reluctantly stated that all rooms were needed for the PGA Golf Tournament and that rooms had been booked for that tournament two months in advance.

25. Plaintiff was never told about previous booking that would intervene with her stay at WoodSpring Suites.

26. Plaintiff's niece reminded the agent of Plaintiff's disability and requested that Plaintiff not be ejected from her unit so suddenly.

27. Plaintiff's request to stay in the unit was ignored.

28. Plaintiff does not believe all the units were rented out.

29. Around 11 AM on May 13, Plaintiff heard police officers entering WoodSpring Suites and became nervous that she would be forcibly removed from WoodSpring Suites.

30. Plaintiff and her niece obtained their belongings and vacated WoodSpring Suites.

31. Plaintiff only noticed only one other person from their floor leaving at the time she vacated.

### HARM TO TENANT

32. As a result of the Defendants' actions as described above, the Plaintiff suffered and continues to suffer irreparable loss and injury including, but not limited to, humiliation, anxiety, stress, emotional distress, and deprivation of her rights to equal housing opportunities because of her disabilities. She has suffered harm in excess of $100,000.

33. By engaging in the unlawful conduct described above, the Defendants acted intentionally and maliciously with callous and reckless disregard of the federally and statutorily protected rights of the Plaintiff. Therefore, this Court must award punitive damages to Ms. Ward to punish the Defendants for its conduct and to make an example of it to others.

### CLAIM 1

### Violations of the Fair Housing Act, 42 U.S.C. §§ 3604 (f)(b)(3), (f)(1)(a), (f)(2)(a)

34. Defendants were in a rental-type arrangement with Plaintiff from March 3, 2022, until May 13, 2022.

35. Defendant WoodSpring Suites owns many multi-family housing units and is accountable for violations of the Fair Housing Act by virtue of their proceeding to engage in a tenant-like relationship with Plaintiff.

36. Plaintiff is a member of the disability protected class. Her severe vision impairment "substantially limits" multiple "major life activities," and has required the use of both a service dog and a digitized walking stick.

37. Defendant violated 42 U.S.C.§ 3604(f)(b)(3) by denying the reasonable accommodation request Plaintiff's niece made on behalf of Plaintiff that she be allowed stay at WoodSpring beyond May 13, 2022.

38. Defendant violated 42 U.S.C. § 3604(f)(3)(b) when they charged her a one-time fee for her service dog when her request for a service dog was immediately apparent, reasonable, and related to her disability.

39. Defendants violated 42 U.S.C. § 3604(f)(1)(a) by ultimately denying Plaintiff continued housing at WoodSpring Suites by making housing unavailable to her because of her disability.

40. Defendant violated 42 U.S.C. § 3604(f)(2)(A) by applying different terms, conditions, and privileges to Plaintiff's tenancy by unexpectedly forcing Plaintiff out of her unit rather than other tenants.

### CLAIM 2

## Violations of Oklahoma Anti-Discrimination Act and Discrimination in Housing Act, Okla. Stat. tit. 25, §§ 1452 (1), (2), (16)(B)

41. In support of the following claims, Plaintiffs repeat and reallege every allegation contained above as if fully set forth herein.

42. Defendants violated Okla. Stat. tit. 25, §1452(1) by making housing at WoodSpring Suites unavailable to Plaintiff because of her disability.

43. Defendant violated Okla. Stat. tit. 25, §1452(2) by applying different terms, conditions, and privileges to Plaintiff's tenancy by unexpectedly forcing Plaintiff out of her unit rather than other tenants.

44. Defendant violated Okla. Stat. tit. 25, §1452(16)(b) by denying the reasonable accommodation request Plaintiff's niece made on behalf of Plaintiff that she be allowed more time to move out.

45. Defendants violated Okla. Stat. tit. 25, §1452(16)(b) when they charged her a one-time fee for her service dog when her request and need for a service dog was immediately apparent, reasonable, and related to her disability.

## CLAIM 3

## Violation of Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, §753(20)

46. In support of the following claims, Plaintiff repeats and realleges every allegation contained above as fully set forth herein.

47. Defendants committed an unfair trade practice when they concealed from

Plaintiff that the rooms for PGA tournament had allegedly been previously reserved at the time Plaintiff moved in and then gave Plaintiff little notice that she would need to leave WoodSpring Suites unexpectedly.

## CLAIM 4

### Violation of Oklahoma Residential Landlord and Tenant Act, Okla. Stat. tit. 41, §§ 111, 113.2(B)

48. In support of the following claims, Plaintiff repeats and realleges every allegation contained above as fully set forth herein.

49. Defendants violated the Oklahoma Residential and Landlord Tenant Act, Okla. Stat. tit. 41, §111 by terminating Plaintiff's tenancy without proper notice.

50. Defendants violated the Oklahoma Residential and Landlord Tenant Act, Okla. Stat. tit. 41, §113.2(B), by charging Plaintiff a fee associated with her service dog.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff requests:

**A.** A judicial determination that Defendants have/has violated the Fair Housing Act;

**B.** A judicial determination that the Defendants have violated the Oklahoma Discrimination in Housing Act.

**C.** A judicial determination that the Defendants have violated the Oklahoma Anti-Discrimination Act.

**D.** A judicial determination that the Defendants have/has violated the Oklahoma Consumer Protection Act;

**E.** A judicial determination that the Defendants have/has violated the Oklahoma

Residential Landlord and Tenant Act;

    **F.**    A judgment for compensatory damages under the Oklahoma Consumer Protection Act;

    **G.**    A judgment for punitive damages for Plaintiff because of Defendants violations of the Fair Housing Act;

    **H.**    A judgment for damages because of the frustration and other suffering experienced by the Plaintiff; actual and punitive damages against the Defendants for their violations of each of the aforementioned acts.

    **I.**    Civil penalties for the unconscionable conduct of the Defendants that violates the Oklahoma Consumer Protection Act;

    **J.**    Attorney fees and costs of this action; and

    **K.**    Any other relief to which the Plaintiff is entitled.

TRIAL BY JURY IS DEMANDED ON ALL ISSUES.

**Dated**: *April 25th, 2023*

Respectfully submitted,
*Attorney for the Plaintiff,*
Ms. Gwendolyn Ward

_____
Badria Mryyan, OBA #35018
Attorney for Petitioner
Legal Aid Services of Oklahoma, Inc
907 S. Detroit Ave., Suite 725
Tulsa, OK 74953
Ph: 918-921-1688
Badria.Mryyan@laok.org